UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY BAILEY,

    Plaintiff,

v.                                                   Case No:   2:15-cv-310-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Larry Bailey's Complaint (Doc. 1) filed on May 18, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

      **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.  Procedural History

On April 8, 2011, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of March 5, 2011.  (Tr. at 77, 78, 173, 191).  Plaintiff's applications were denied initially on May 27, 2011, and on reconsideration on August 5, 2011.  (Tr. at 77, 78, 83, 89).  A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on July 25, 2013.  (Tr. at 28-62).  The ALJ issued an unfavorable decision on November 15, 2013.  (Tr. at 9-27).  The ALJ found Plaintiff not to be under a disability from March 5, 2011 through the date of the decision.  (Tr. at 20).

On March 20, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on May 18, 2015.  Defendant filed an Answer (Doc. 9) on July 22, 2015.  Both parties filed memoranda in support of their positions.  (Docs. 14-15).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 10).  This case is ripe for review.

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1,

2

determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) can perform other work of the sort found in the national economy. *Packer*, 542 F. App'x at 891 (citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014. (Tr. at 14). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 5, 2011, the alleged onset date. (Tr. at 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, status post spinal fusion surgery, and hypertension. (Tr. at 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 17). At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work except that Plaintiff:

> can sit, stand, or walk for six hours in an eight-hour workday. [Plaintiff] is not limited in pushing and pulling except by lifting and carrying restrictions. [Plaintiff] may occasionally climb ramps, stairs, ropes, ladders, scaffolds, balance, stoop, kneel, crouch, or crawl (occasionally meaning up to one third of the workday). [Plaintiff] should avoid concentrated exposure to vibrations and hazards such as moving machinery and unprotected heights. [Plaintiff] has no limitations in

---

2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

exposure to wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, extreme cold, or extreme heat.

(Tr. at 17).

At step four, the ALJ determined that Plaintiff is able to perform his past relevant work as a security guard, D.O.T. 372.667-034, light exertional level, svp 3.  (Tr. at 19).[2]  The ALJ wrote that "in comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform it as generally performed."  (Tr. at 19).  Moreover, the ALJ specifically noted that the vocational expert testified that a person with the above residual functional capacity would be able to perform Plaintiff's past work.  (Tr. at 19).

Although the ALJ determined at step four that Plaintiff could perform past relevant work, the ALJ proceeded to make alternative findings for step five.  (Tr. at 19).  For these alternative findings, the ALJ considered Plaintiff's age, education, work experience, and provided an RFC that showed:

> greater mental and physical limitations such that claimant is limited to work at the sedentary exertional level, may only frequently reach overhead, handle, feel, finger, push, and pull; may only occasionally operate foot controls, climb ramps or stairs, stoop, knee, crouch, or crawl; may never climb ladders, scaffolds, or balance; may only occasionally be exposed to hazards, operate a motor vehicle; can walk no more than one hundred yards at a reasonable pace; and is limited to understanding, remembering, and carrying out simple instructions, unskilled work, and simple repetitive tasks . . . .

(Tr. at 19).  Despite additional limitations from the alternative findings, the ALJ found that there are still jobs that exist in significant numbers in the national economy that Plaintiff can perform.

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code.

4

(Tr. at 19). Specifically, even including the additional limitations, the ALJ noted the vocational expert's opinion that Plaintiff could perform the following jobs:

> Cashier II, D.O.T. 211.462-010, sedentary exertional level, svp 2
>
> Elemental Hand Worker, D.O.T. 715.684-026, sedentary exertional level, svp 2
>
> Toll or Ticket Taker, D.O.T. 211.462-038, sedentary exertional level, svp 2

(Tr. at 20).

The ALJ determined that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (Tr. at 20). The ALJ, therefore, concluded that Plaintiff was not under a disability from March 5, 2011, through the date of the decision. (Tr. at 20).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's

5

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

**II.   Analysis**

Plaintiff argues two issues on appeal:

1. The ALJ erred in failing to find that Plaintiff's mental impairments are severe.

2. The ALJ failed to accord proper weight to the opinion of Plaintiff's treating physician.

(Doc. 14 at 1).[3] The Court addresses each issue in turn.

**A.  Plaintiff's Mental Impairments**

Plaintiff first contends that the ALJ erred by failing to find his mental impairments to be severe. Plaintiff asserts that the ALJ "erroneously determined that [his] mental impairments were non-severe." (Doc. 14 at 10). Plaintiff argues that his mental impairments are uncontradicted by the record and should have been included in the ALJ's RFC determination. (*Id.* at 13). As a result of these alleged failures, Plaintiff argues that "this case should be remanded, so that the ALJ may be directed to consider Bailey's severe and non-severe impairments, pursuant to SSR 96-8p, when making his RFC determination." (*Id.*).

---

[3] Plaintiff actually lists three issues on the first page of his Memorandum in Support of his Complaint. (Doc. 14 at 1). Specifically, Plaintiff also states that "3. The ALJ erred in determining that the Plaintiff was capable of performing light work." (*Id.*). However, Plaintiff only addresses numbers 1 and 2 in the body of the Memorandum. (*See id.*).

6

On the other hand, Defendant argues that the ALJ "found in Plaintiff's favor at step two of the sequential evaluation process by finding that [Plaintiff] had several severe impairments." (Doc. 15 at 4). Thus, because the ALJ found at least one impairment to be severe and continued on to the next step of the sequential evaluation process, Defendant argues that "any error is harmless because the ALJ found in Plaintiff's favor at step two and considered all impairments, severe and non-severe, in the remainder of the decision." (*See id.* at 4-5). Moreover, Defendant argues that "contrary to Plaintiff's contentions, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe." (*Id.* at 5). Defendant contends that the "record supports that Plaintiff failed to meet his burden of proving he had additional severe impairments or limitations that affected his ability to work." (*Id.* at 8). Finally, Defendant argues that "any error in failing to assess mental limitations was harmless because, as the ALJ noted, the [vocational expert] testified that even with mental limitations, Plaintiff could perform a significant number of other jobs." (*Id.* at 9).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

7

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ made a determination that Plaintiff suffered from three severe impairments: degenerative disc disease, status post spinal fusion surgery, and hypertension. (Tr. at 14). Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. The only requirement is that the ALJ considered Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe. Specifically, in making his RFC determination, the ALJ stated that:

> the undersigned *has considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned *has also considered opinion evidence* in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-Sp, 96-6p and 06-3p.

(Tr. at 17) (emphasis added). Based on these statements, the Court concludes that the ALJ considered all of Plaintiff's impairments, whether severe or not, when he considered the evidence of record.

Moreover, the Court notes that the ALJ specifically found that Plaintiff's medically determinable mental impairments of depression and an anxiety disorder were non-severe. (Tr. at

8

16). In making his finding that Plaintiff's mental limitations were non-severe, the ALJ wrote that Plaintiff's mental impairments "considered singly and in combination, do not cause more than minimal limitations in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (Tr. at 16). Regardless of whether the ALJ erred in this conclusion that Plaintiff's mental impairments were non-severe, the record nevertheless demonstrates that the ALJ considered Plaintiff's mental impairments in combination with Plaintiff's other impairments. (*See* Tr. at 16-17). Therefore, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's mental impairments are severe, or if he did err, the error was harmless.

### B. The ALJ's Assessment of Plaintiff's Treating Physician, Dr. Douglas Hershkowitz

The second issue raised by Plaintiff concerns the ALJ's assessment of Plaintiff's treating physician, Dr. Douglas Hershkowitz. Plaintiff argues that the ALJ erroneously accorded "no weight" to the opinion of Plaintiff's treating physician, Dr. Douglas Hershkowitz. (Doc. 14 at 13). Specifically, Plaintiff argues that the ALJ failed to properly weigh the factors required by the regulations. (*See id.*). Moreover, Plaintiff contends that "the totality of the medical evidence supports the opinion of Dr. Hershkowitz." (*Id.* at 18). As a result of this deficiency, Plaintiff requests that this case be remanded so that Dr. Hershkowitz's opinion can be accorded its proper weight. (*Id.*).

Defendant disagrees and argues that substantial evidence supports the ALJ's criticisms of Dr. Hershkowitz's opinion. (Doc. 15 at 11). Moreover, Defendant argues that the regulations "do not require an ALJ to explicitly discuss each of the factors in his or her decision." (*Id.* at 13-14). Contrary to Plaintiff's assertion, Defendant contends that "[t]he regulations only require an ALJ to give 'good reasons' in his or her decision for the weight given a treating source's

9

opinion." (*Id.* at 14).  Defendant maintains that the ALJ "provided good reasons, supported by substantial evidence for rejecting the treating source opinion, and the ALJ did not need to discuss each of the regulatory factors in discounting the opinion." (*Id.*).  Thus, Defendant argues that "[g]iven the record as a whole, substantial evidence supports the ALJ's decision to give little weight to Dr. Hershkowitz'[s] opinion." (*Id.* at 15).

Medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  When evaluating a medical source, the factors to be considered by an ALJ include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id*. (citations omitted).

For treating physicians, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1241.  When an ALJ elects to disregard the opinion of a treating physician, he or she must clearly articulate the reasons. *Id.*

Additionally, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). However, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Id.* (quoting *Sharfarz*, 825 F.2d at 279). In situations where an ALJ "articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

In this case, Dr. Hershkowitz began treating Plaintiff in February 2010. (Tr. at 369-70). In a letter dated May 19, 2011, Dr. Hershkowitz wrote:

> To Whom It May Concern:
>
> The above named patient has severe low back and leg pain. He has undergone a lumbar fusion but continues to have severe pain. *His MRI and myelogram studies show no significant nerve root compression* and thus his pain is most probably related to nerve injury. At this point he is unable to work at any capacity. It is unlikely he will ever work again. Further treatment options are being discussed with him, they will probably only serve to keep his pain under control and it is doubtful he will be able to work.

(Tr. at 379) (emphasis added).

The ALJ noted Dr. Hershkowitz's conclusion that Plaintiff was unable to work in any capacity due to his severe pain despite a lack of evidence showing significant nerve compression. (Tr. at 18). The ALJ concluded that no "significant medical treatment notes or objective medical evidence including MRI, myelogram, CT, and nerve conduction testing" support Dr. Hershkowitz's conclusion. (Tr. at 18-19). Moreover, the ALJ specifically noted that "[r]epeated

examination showed negative SLR,[4] lack of spinal tenderness, intact sensation, intact motor function, and a normal gait." (*See* Tr. at 18-19). Because the medical treatment notes and objective medical evidence did not support the conclusion that Plaintiff "was unable to work in any capacity," the ALJ assigned "no weight" to Dr. Hershkowitz's medical opinion. (*See* Tr. at 18-19).

As stated above, the scope of the Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts*, 841 F.2d at 1080, and whether the findings are supported by substantial evidence, *Richardson*, 402 U.S. at 390. When supported by substantial evidence, the district court will affirm. *See Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358. An ALJ must clearly articulate the reasons for disregarding the opinion of a treating physician. *Phillips*, 357 F.3d at 1241. While the opinion of a treating physician must usually be given substantial or considerable weight, "good cause" can be shown for not giving such deference when a treating physician's opinion was not bolstered by the evidence, when the evidence supported a contrary finding, or when the opinion is conclusory or inconsistent with the doctor's own medical records. *See id.* at 1241. Thus, this Court's review is limited to determining whether the ALJ erred in assigning "no weight" to Dr. Hershkowitz's medical opinion.

In reviewing the medical records, the Court notes that, on March 18, 2010, Plaintiff underwent a lumbar myelogram, an x-ray, and a CT scan. (Tr. at 346, 348-49). The myelogram showed "[n]ormal lumbar myelogram with previous fusion noted at L5-S1." (Tr. at 346). The x-ray showed "[n]ormal postoperative appearance of a pedicle screw and interbody fusion procedure at L5-S1" and "[e]xamination normal cephalad to L5." (Tr. at 348). The CT scan

---

[4] The term "SLR" is an abbreviation for straight leg raise.

showed "[s]hallow osteophyte ridge complex at L5-S1 consistent with preoperative spondylolisthesis and associated degenerative changes, extending slightly into the neural foramina without demonstrable impact on the dural sac or exiting nerve root sheaths" but the CT scan was "[o]therwise, normal post myelographic computed tomography of the entire lumbar spine." (Tr. at 349). An additional CT scan performed the month before on February 24, 2010 showed, in pertinent part, "[m]ild right and mild to moderate left neural foraminal narrowing at L5/S1. No central canal stenosis demonstrated. Fusion hardware intact without evidence for loosening or other complication." (Tr. at 351-52). A further nerve conduction study performed on September 27, 2010 showed results within normal limits. (Tr. at 354). Finally, an MRI performed on April 15, 2011 showed "[p]ostoperative changes from L5/S1 fusion without evidence of central canal stenosis" and "[t]he nerve root exit foramina are not well assessed due to artifact from the fusion hardware." (Tr. at 408).

As stated above, substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote*, 67 F.3d at 1560. When an ALJ's decision is supported by substantial evidence, the district court will affirm. *See Edwards*, 937 F.2d at 584 n.3.

Here, upon review of the parties' briefing and the record, the Court finds that substantial evidence supports the conclusion by the ALJ that no significant medical treatment notes and/or objective medical evidence supports Dr. Hershkowitz's conclusion that Plaintiff is incapable of working. (*See* Tr. at 18-19). The results from objective testing cited above are consistent with the ALJ's findings and conclusion. Further, Plaintiff does not cite any other specific medical treatment notes or testing supporting a contrary conclusion. (*See* Doc. 14). In fact, Plaintiff's

Memorandum in Support notes that Plaintiff's "testing did not reveal a pinpoint cause of the [sic] Bailey's continued pain . . . ."  (Doc. 14 at 17).

Thus, upon consideration, the Court finds that the ALJ provided good reasons for disregarding Dr. Hershkowitz's medical opinion, and those good reasons were clearly articulated based on substantial evidence.  Therefore, the Court finds that the ALJ applied the correct legal standard and did not err by discounting the opinion of Plaintiff's treating physician, Dr. Hershkowitz.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 20, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties